**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| **IN RE** ) | **Case No. 04-04401-TLM** |
| ) | |
| **NIELSEN, GAYLE D.** ) | |
| ) | |
| Debtor. ) | **MEMORANDUM OF DECISION** |
| _____ ) | |

**INTRODUCTION**

This case raises a question as to the timeliness of a proof of claim. The Court rejects, for the reasons stated, the creditor's assertions that its late filed claim should be allowed and treated as if it were timely under § 726(a)(2)(C).[1] This decision constitutes the Court's findings and conclusions on the question presented. Fed. R. Bankr. P. 9014, 7052. An appropriate order will be entered.

**BACKGROUND AND FACTS**

Gayle Nielsen ("Debtor") filed a voluntary chapter 7 petition on December 10, 2004. Debtor's schedules did not indicate any assets would be available for distribution to creditors. The notice of bankruptcy filing ("Initial Notice") that was issued by the Court therefore indicated no proofs of claim should be filed. *See* Doc. No. 5 (Bankruptcy Noticing Center ("BNC") certificate of service of Initial Notice on January 5, 2005). Creditors were advised in the Initial Notice that, in

---

[1] Citations are to the Bankruptcy Code, Title 11, U.S. Code. This case precedes the effective date of the amendments to the Code made by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8.

MEMORANDUM OF DECISION - 1

the event assets were later determined to be available to pay claims, they would be sent another notice advising of a deadline for filing a proof of claim. *Id.*; *see generally* Fed. R. Bankr. P. 2002(e).

BNC served the Initial Notice on "Great Northern Development, c/o Terry Toabs, 429 Second Avenue South, Wolf Point, MN 59201-1604." *Id.* It is undisputed that this address is erroneous.[2]

The chapter 7 Trustee later determined that assets would be available, and requested that the Court issue a notice seeking claims. *See* Fed. R. Bankr. P. 3002(c)(5).[3] The Court caused such a notice to be issued and served. *See* Doc. No. 9 ("Asset Notice"); *see also* Doc. No. 10 (BNC certificate of service of Asset Notice on April 25, 2005). The bar date for claims was 90 days from the mailing of the Asset Notice, or July 25, 2005. The Asset Notice was mailed to Great Northern Development at the same address as used for the Initial Notice. *See* Doc. No. 10.

Great Northern Development Corp. ("GNDC") filed a proof of claim, Claim No. 6, on September 6, 2006, for an unsecured debt of $113,686.23. It also filed

---

[2] The matrix and schedules, and thus BNC's certificates, indicate GNDC is in Wolf Point, "MN" rather than Wolf Point, "MT" though all use the evidently correct Montana zipcode (59201). Nothing in the Court's record reflects the return of mail undeliverable as addressed.

[3] This Rule provides an exception to the general rule, applicable in chapter 7, that a proof of claim is timely filed if filed not later than 90 days after the first date set for the § 341(a) meeting of creditors. The Rule 3002(c)(5) exception provides: "If notice of insufficient assets to pay a dividend was given to creditors pursuant to Rule 2002(e), and subsequently the trustee notifies the court that payment of a dividend appears possible, the clerk shall notify the creditors of that fact and that they may file proofs of claim within 90 days after the mailing of that notice."

MEMORANDUM OF DECISION - 2

on September 14, 2006, a "Motion to Allow Late Filed Claim." Doc. No. 17 (the "Motion").[4] The Motion seeks a ruling by the Court under § 726(a)(2)(C) that the tardily filed claim can be treated as a timely filed claim and share in distributions pro rata with timely filed claims.[5]

The Motion was supported by an affidavit of a GNDC loan officer, Martin DeWitt, Doc. No. 18, and an affidavit of GNDC's attorney, Jed Manwaring, Doc. No. 19.[6] DeWitt testifies that:

> The GNDC file reflects that GDNC has been aware of [Debtor's] bankruptcy since shortly after its filing. However, the file does not reflect from where the initial notice was obtained. The initial notice also states that creditors should not file a proof of claim until further notice.

Doc. No. 18 at 1, ¶2. DeWitt also notes that the correct address for GNDC is "233 Cascade Street, Wolf Point, MT 59201." *Id.* at ¶3. DeWitt testifies that the Asset Notice was not received by GNDC. *Id.* at 2, ¶4. He indicates that GNDC learned of the existence of the asset notice and claim bar date when it contacted its attorney in Boise, Idaho, in September, 2006. *Id.*

---

[4] GNDC filed an "amended" motion seeking such relief on October 6. Doc. No. 21. It adds little if anything to the original Motion. The Court's use of the term "Motion" encompasses both the original and the amended filing.

[5] GNDC filed no briefing in support of the request. And it identified no authorities in its Motion other than a bare citation to § 726(a)(2)(C).

[6] Consideration of affidavits in contested matters can be problematic given Fed. R. Bankr. P. 9014(d). However, given the nature of Trustee's position on the Motion and the absence of any creditor opposition, it seems there are no "disputed material factual issues" presented.

MEMORANDUM OF DECISION - 3

The affidavit of GNDC's attorney, Manwaring, indicates he was retained by GNDC in relation to Debtor's bankruptcy case on January 11, 2005.  Doc. No. 19 at 1, ¶1.  He evaluated the possibility of opposing discharge, but says GNDC decided not to pursue that relief.  *Id.*  He knew that the case was a "no asset" chapter 7 and that the clerk had issued notice instructing no claims were to be filed.  *Id.*

Though Manwaring had subsequent informal discussions with the Trustee, he indicates the Trustee never mentioned recovering any assets.  *Id.* at ¶2.  When GNDC contacted Manwaring in September, 2006, Manwaring looked at the Court's docket and discovered the Asset Notice.  *Id.* at 2, ¶3.

In addition to the foregoing, the docket itself reflects some other relevant facts.  For example, the file establishes there was no request for notice filed by GNDC or its counsel asking that further notices be sent to GNDC's correct mailing address or to its attorney.  *See* Fed. R. Bankr. P. 2002(g).

The Motion and notice of an October 10, 2006 hearing were served on Trustee, Debtor's counsel and the United States Trustee.  GNDC did not serve the creditors who had filed proofs of claim[7] or creditors generally.  However, that defect[8] was remedied by additional notice and a continued hearing.  *See* Doc. No.

---

[7] The claims register reflects four timely filed nonpriority unsecured claims (totaling $10,836.58) and a timely filed claim for $627.98 which is an unsecured claim possibly asserting a priority status.  The only other proof of claim filed is GNDC's.

[8] GNDC's Motion could not be considered in the absence of notice to those creditors of
(continued...)

MEMORANDUM OF DECISION - 4

28. The Motion was heard on November 15, 2006. Neither the Trustee nor any of the creditors in the case filed an objection to GNDC's Motion, but the Trustee orally voiced concerns at the October 10 hearing.

The Court took GNDC's request under advisement to determine whether the relief sought was appropriate under the facts as alleged and in light of controlling law.[9]

## DISCUSSION AND DISPOSITION

Section 726 governs how a chapter 7 trustee distributes funds collected through liquidation of property of the estate. Those funds go, first, to priority claims including administrative expenses. *See* § 726(a)(1). The property of the estate is then distributed:

> (2) second, in payment of any allowed unsecured claim, other than a claim of a kind specified in paragraph (1), (3), or (4) of this subsection, proof of which is –
> (A) timely filed under section 501(a) of this title;
> (B) timely filed under section 501(b) or 501(c) of this title; or
> (C) tardily filed under section 501(a) of this title, if –
> (i) the creditor that holds such claim did not have notice or actual knowledge of the case in time for timely filing of a proof of such claim

---

[8](...continued) the estate that filed timely claims. It is obvious that they would be impacted by the relief sought, since allowing GNDC's claim as timely filed under § 726(a)(2)(C) would substantially dilute the potential distributions to those creditors on their claims.

[9] The absence of any strongly urged objection by the Trustee or any opposition by the potentially impacted creditors is not significant. Even where no opposition is raised, the Court may only enter orders that are proper under the Code and Rules. *In re Millspaugh,* 302 B.R. 90, 95; 04.1 I.B.C.R. 25, 26 (Bankr. D. Idaho 2003).

MEMORANDUM OF DECISION - 5

>> under section 501(a) of this title; and
>> (ii) proof of such claim is filed in time to permit payment of such claim[.]

If not qualified for treatment under § 726(a)(2)(C), the tardily filed claim is paid in third position, after the timely filed claims. *See* § 726(a)(3). As noted, GNDC specifically contends that its tardily filed claim should be treated as timely under § 726(a)(2)(C).[10]

*Zidell, Inc. v. Forsch (In re Coastal Alaska Lines, Inc.)*, 920 F.2d 1428 (9th Cir. 1990), addressed a creditor's assertion under § 726(a)(2)(C). Coastal Alaska Lines, Inc. ("CAL") filed for relief in April, 1986. It was a no asset chapter 7 and the initial notice advised creditors not to file claims. The creditor, Zidell, was not listed on the schedules and was not served this notice. In June, 1986, the clerk issued a notice advising of recovery of assets and setting a September, 1986 claim bar date. This notice, too, was not served on Zidell.

However, in August, Zidell learned of the bankruptcy of a CAL subsidiary and, through discussions with common counsel for both these debtors, became

---

[10] GNDC did not ask the Court to extend the bar date and allow its late filed claim under a theory of "excusable neglect." The decision, if consciously made, was a good one. The Supreme Court has held that the "'excusable neglect' standard of Rule 9006(b)(1) governs late filings of proofs of claim in Chapter 11 cases but not in Chapter 7 cases." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 389 (1993). The Supreme Court noted the general excusable neglect standard applicable for extensions of time found in Rule 9006(b)(1) is, by its very language, subject to the limitations in Rules 9006(b)(2) and (b)(3). Rule 9006(b)(3) limits any judicial extension of time under certain Rules "only to the extent and under the conditions stated in those rules." One of the rules listed in Rule 9006(b)(3) is Rule 3002(c), which governs the time for filing claims in chapter 7 cases. Rule 3003(c), which addresses time for filing in chapter 11 cases, is not similarly referenced. *Id.* at note 4. *See also Dicker v. Dye (In re Edelman)*, 237 B.R. 146, 152 (9th Cir. BAP 1999).

MEMORANDUM OF DECISION - 6

aware of the CAL filing. A copy of the CAL initial (no asset) notice was provided to Zidell by CAL's counsel. That notice, consistent with Form and Rule, advised that if assets were discovered, creditors would be notified and given an opportunity to file claims.

In October, 1986, after the claims bar date, Zidell asked to be added to the CAL mailing list. A year later, Zidell filed claims in both bankruptcies, prompted by a notice to file claims in the subsidiary's case. Its claim in CAL's case was thus late filed and objected to by the trustee. 920 F.2d at 1429-30.

The court of appeals stated:

> [T]he trustee concedes that Zidell did not receive actual notice of the claims bar date. However, Zidell knew much more than simply that CAL was in bankruptcy. Zidell received a copy of the first notice of creditors' meeting[.] . . . Thus, Zidell knew that, if assets were found, the court would notify the *listed creditors* and give them an opportunity to file their claims. Zidell also knew that it had not been named as a creditor and therefore would not receive the statutory notice. Under these circumstances, Zidell had sufficient notice and reasonable opportunity to appear as a creditor and receive statutory notice. It should have had itself added to the list of creditors in order to preserve its rights. . . . Zidell did not act reasonably in waiting to receive notice.

*Id.* at 1430-31.[11]

*Coastal Alaska Lines* then addressed the § 726(a)(2)(C) argument advanced

---

[11] The court rejected Zidell's due process arguments, and also its attempt to extend the time for timely claim filing, finding that the bankruptcy court's power under Fed. R. Bankr. P. 9006(b)(1) was expressly and unambiguously limited by Rule 9006(b)(3) to only those circumstances set forth in Fed. R. Bankr. P. 3002(c), and that no additional equitable grounds for extension – including but not limited to excusable neglect – were available. *Id.* at 1431-33.

MEMORANDUM OF DECISION - 7

by GNDC here:

> Zidell argues that it should be allowed to participate in the distribution of assets on the same level as those who filed timely claims. Zidell bases this argument on 11 U.S.C. § 726(a)(2)(C) which provides that unsecured creditors who filed late claims will be paid at the same time as unsecured creditors who filed timely claims as long as (1) the creditor did not have "notice or actual knowledge of the case" in time to file a timely claim and (2) proof of the claim is filed before distribution occurs.
>
> Zidell clearly satisfies the second part of the statute as it filed its claim before the interim distribution occurred. However, Zidell knew of CAL's bankruptcy in early August of 1986, over two months before the claims bar date of September 30, 1986. Zidell had knowledge of the case in time to file a timely claim. Therefore, the district court did not err in denying Zidell's request for participation under § 726.

*Id.* at 1433.

*Coastal Alaska Lines* controls the instant matter. Here, GNDC had actual knowledge of Debtor's case in January, 2005. It even retained local bankruptcy counsel to investigate and evaluate that case. It had seen, somehow, the Initial Notice. It knew that, even though proofs of claim were not presently being solicited, a notice would be issued in the event that assets were discovered. It had the opportunity to ensure that it was properly listed on the mailing list for this and other notices, and even to file a request for notice specifying precisely how it wished to be notified in the future, whether to a specific address, or to its counsel, or both.

GNDC argues that it lacked "knowledge of [the] Notice of Need to File

MEMORANDUM OF DECISION - 8

Proof of Claim" based on the incorrect address of record, and that the DeWitt affidavit "establishes that GNDC did not have knowledge of [that Asset] Notice until September 1, 2006." Doc. No. 21 at 1, 2. However, the Code requires that the creditor "did not have notice or actual knowledge *of the case* in time for timely filing of a proof of claim." *Coastal Alaska Lines* makes clear that, if the creditor has notice or knowledge of the case, and can reasonably ensure the accuracy of address so that it will receive any future Rule 3002(c)(5) notice of discovery of assets and need to file claims, it cannot rely on § 726(a)(2)(C) to save a tardily filed proof of claim from subordinated distribution.

**CONCLUSION**

Given this controlling Ninth Circuit authority, and because GNDC has failed to show how it overcomes the "notice or actual knowledge of the case" restriction of § 726(a)(2)(C), the Motion, Doc. Nos. 17, 21, is found not well taken and it will be denied.[12]

An appropriate order will be entered.

---

[12] One final note. At the November 15, 2006 hearing, Trustee informed the Court that a similar GNDC motion had been "granted" by Bankruptcy Judge Jim D. Pappas in a related case, *In re Mitchell Bradley Nielsen*, Case No. 04-04414-JDP. In that case, the Order, drafted and submitted by GNDC's counsel, states that GNDC's claim is "a tardy claim filed in time to permit payment pursuant to § 726(a)(2)(C)." *See id.* at Doc. No. 20. The Order also states, however, that "[t]o the extent that GNDC requests that its proof of claim be considered timely, GNDC's motion is denied." This Court has reviewed Judge Pappas' oral ruling. That ruling makes clear that GNDC's claim was allowed only as tardily filed (*i.e.*, under § 726(a)(3)), and that it would not be treated as a timely filed claim for distribution purposes. It seems that an error exists in the Order in Case No. 04-04414-JDP in that the reference in the passage quoted above should have been § 726(a)(3), not § 726(a)(2)(C).

MEMORANDUM OF DECISION - 9

DATED: November 22, 2006



TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE